Electronically Filed
Intermediate Court of Appeals
CAAP-19-0000804
31-MAY-2024
08:17 AM
Dkt. 90 SO

NO. CAAP-19-0000804


IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I


DEBBIE L. SEGHORN, Claimant-Appellant-Appellant, v.
STATE OF HAWAI'I, DEPARTMENT OF TRANSPORTATION,
Employer-Cross-Appellant-Appellee, Self-Insured, and
STATE OF HAWAI'I, DEPARTMENT OF HUMAN RESOURCES DEVELOPMENT,
Adjuster-Cross-Appellant-Appellee.


APPEAL FROM THE LABOR AND INDUSTRIAL RELATIONS APPEALS BOARD
(CASE NO. AB 2017-307(H)(T); DCD No. 1-16-10013)


SUMMARY DISPOSITION ORDER
(By: Hiraoka, Presiding Judge, Wadsworth and McCullen, JJ.)

Claimant-Appellant-Appellant Debbie L. Seghorn

(**Seghorn**) appeals the State of Hawai'i, Labor and Industrial

Relations Appeals Board's (**Board**): (1) October 23, 2019 "Order

Denying Claimant's Motion for Re-Opening and/or

Reconsideration"; (2) October 4, 2019 Amended Decision and

Order; (3) September 12, 2019 Decision and Order; and

(4) August 21, 2019 Order Denying Motion to Compel. On appeal,

Seghorn proffers five arguments, challenging the denial of

temporary total disability benefits (or **TTD**) after June 26,

2016, and certain late penalties, attorney's fees, and costs

from Employer-Cross-Appellant-Appellee, State of Hawaiʻi Department of Transportation (**Employer**).[1]

Upon careful review of the record and the briefs submitted by the parties and having given due consideration to the issues raised and the arguments advanced, we resolve the points of error as discussed below, and affirm.

**(1)** Seghorn argues the Department of Labor and Industrial Relations Director's (**Director**) November 2, 2016 decision determined the cause of her injury and "is res judicata and law of the case in this appeal." (Formatting altered.) Seghorn asserts Employer's reliance on reports of her preexisting conditions is an attempt to relitigate the cause of her injury.

The Director's November 2, 2016 decision determined Seghorn suffered a psychological injury in the course of her employment, and deferred the decision on temporary disability. The Director's October 18, 2017 decision determined Seghorn was entitled to temporary total disability benefits. The

---

[1] We note that Seghorn's points of error do not correspond with the argument section of her opening brief.

We also note that, in her points of error, Seghorn challenges Findings of Fact (**FOF**) 4, 14, 15, 20, 21, 22, and 30 in the October 4, 2019 Amended Decision and Order. FOF 4, 20, and 21 make credibility determinations, which we will not disturb on appeal. See generally, Pave v. Prod. Processing, Inc., 152 Hawaiʻi 164, 172, 524 P.3d 355, 363 (App. 2022) (stating when reviewing FOF in agency appeals, this court "cannot . . . review the agency's findings of fact by passing upon credibility of witnesses or conflicts in testimony") (citation and internal quotation marks omitted). FOF 15 is addressed infra at section (5), FOF 22 is addressed infra at section (2), and FOF 30 is addressed infra at section (3). And Seghorn points to no evidence in the record to show FOF 14 was clearly erroneous.

October 18, 2017 decision also imposed a 20% late fee, as well as attorney's fees and costs on Employer.

Employer appealed the October 18, 2017 decision to the Board, and in its initial conference statement indicated it would challenge the total temporary disability benefits for the dates Seghorn worked, the 20% penalty, and attorney's fees and costs. Moreover, the October 4, 2019 Amended Decision and Order enumerated the issues on appeal were (1) "What is the period of temporary total disability, resulting from [Seghorn]'s November 23, 2015 work injury"; (2) "Whether Employer is liable for a penalty of $3,406.77 assessed pursuant to [Hawaiʻi Revised Statutes (**HRS**) § 386-92 (2015)] for late payment of the temporary total disability benefits for [Seghorn]'s November 23, 2015 work injury"; and (3) "Whether Employer is liable for [Seghorn]'s attorney's fees and costs."

In sum, Employer did not appeal the November 2, 2016 decision determining the cause of Seghorn's injury, and the cause of her injury was not an issue before the Board. In other words, the cause of Seghorn's injury was not relitigated and, thus, we do not reach Seghorn's res judicata and law of the case argument(s).

**(2)** Seghorn argues "the clear weight of the evidence was that [she] remains disabled as a result of the work-place psychological injury or aggravation of an alleged pre-existing

3

condition." (Formatting altered.) The gist of Seghorn's argument appears to be that the Board erred in determining she was stable as of June 26, 2016.

HRS § 386-31(b) (Supp. 2018) provides "[w]here a work injury causes total disability not determined to be permanent in character, the employer, for the duration of the disability, but not including the first three calendar days thereof, shall pay the injured employee a weekly benefit" and payment of benefits "shall only be terminated upon order of the director or <u>if the employee is able to resume work</u>." (Emphasis added.) "Able to resume work means an industrially injured worker's injury has <u>stabilized</u> after a period of recovery and the worker is capable of performing work in an occupation for which the worker has . . . demonstrated aptitude." HRS § 386-1 (2015) (internal quotation marks omitted and emphasis added).

Here, the Board was authorized to hold a de novo hearing, and one of the issues on appeal was "the period of temporary total disability, resulting from [Seghorn]'s November 23, 2015 work injury." HRS § 386-87(b) (2015) ("The appellate board shall hold a full hearing de novo on appeal."). In determining the period of temporary total disability, it was within the Board's authority to consider whether Seghorn's injury had stabilized. <u>See generally</u>, HRS §§ 386-1, 386-31(b).

4

The Board found that Seghorn was not temporarily and totally disabled as of June 26, 2016. The Board credited the opinions of Brian Goodyear, Ph.D. (**Dr. Goodyear**) and Joseph P. Rogers, Ph.D. (**Dr. Rogers**) that Seghorn's "work injury reached a point of medical stability at the time of Dr. Goodyear's June 26, 2016 evaluation." Seghorn does not expressly challenge these findings in her points of error, and we will not disturb credibility determinations on appeal. Hawaiʻi Rules of Appellate Procedure (**HRAP**) Rule 28(b)(4); see generally, Pave v. Prod. Processing, Inc., 152 Hawaiʻi 164, 172, 524 P.3d 355, 363 (App. 2022); Okada Trucking Co. v. Bd. of Water Supply, 97 Hawaiʻi 450, 458, 40 P.3d 73, 81 (2002) ("Findings of fact . . . not challenged on appeal are binding on the appellate court.").

As such, we cannot conclude the Board violated constitutional or statutory provisions, exceeded its authority, followed unlawful procedure, clearly erred, or abused its discretion in determining Seghorn reached medical stability as of June 26, 2016. See HRS § 91-14(g) (Supp. 2017).

**(3)** Seghorn argues that "penalties were justified for all late payments up to the Director's cut off of Nov. 30, 2016[,]" and the Board "based its penalties on its erroneous cut off date of June 26, 2016." (Formatting altered.) Seghorn asserts, "[i]t is puzzling that [the Board] states that there

5

was 'no evidence of timing' of the issuance of the disability checks after June 26, 2016."

Under HRS § 386-31, "[t]he employer shall pay temporary total disability benefits promptly as they accrue to the person entitled thereto without waiting for a decision from the director, unless this right is controverted by the employer in the employer's initial report of industrial injury." HRS § 386-31(b). "The first payment of benefits shall become due and shall be paid no later than on the tenth day after the employer has been notified of the occurrence of the total disability, and thereafter the benefits due shall be paid weekly except as otherwise authorized pursuant to section 386-53." HRS § 386-31(b).

"The payment of these benefits shall only be terminated upon order of the director or if the employee is able to resume work." HRS § 386-31(b). If not paid on time, "there shall be added to the unpaid compensation an amount equal to twenty per cent thereof payable at the same time as, but in addition to, the compensation. . . . " HRS § 386-92 (2015).

Here, the Board found Employer was liable for late payment penalties for the following periods:

- November 26, 2015 through December 15, 2015

- January 15, 2016 through February 17, 2016

- March 2, 2016 through March 6, 2016

- March 17, 2016 through April 5, 2016

- May 25, 2016 through June 26, 2016

(Emphasis omitted.)  FOF 30 stated,

> 30.  There being no evidence of the timing of payment to TTD for the remaining periods through June 26, 2016, and [Seghorn] not being entitled to TTD for the period after June 26, 2016, the Board finds that [Seghorn] has not met her burden of proving, by clear and convincing evidence, that Employer should be liable for a penalty, pursuant to [HRS §] 386-92[.]

(Emphasis added.)  Seghorn challenges FOF 30.

The Board, however, did not reject a penalty for total temporary disability benefits payments *after* June 26, 2016 based on no evidence of timing of the payments in the record as Seghorn claims.  The Board rejected the penalty for total temporary disability benefits payments *after* June 26, 2016 because Seghorn's work injury was stable as of June 26, 2016.

Thus, FOF 30 was not clearly erroneous and we cannot conclude the Board violated constitutional or statutory provisions, exceeded its authority, followed unlawful procedure, clearly erred, or abused its discretion in rejecting a penalty for payments made for total temporary benefits after June 26, 2016.

**(4)**  Seghorn contends the Board "erred when it failed to compel discovery of Employer records and non-responsive answers."  (Formatting altered.)  Seghorn asserts Employer failed to fully respond to interrogatories 6, 7, 8, 9, 10 and 11.

The order denying the motion to compel did not provide a reason for the denial, but stated that a hearing on the motion was held on March 7, 2019. The record on appeal in this case consists of 11 volumes and over 2,800 pages, and Seghorn fails to point to where in these 11 volumes and over 2,800 pages the transcripts for the March 7, 2019 hearing are located.[2]  See Hawaiʻi Administrative Rules § 12-47-56(b) (requiring appellant to order transcripts of proceedings not already on file); Onaka v. Onaka, 112 Hawaiʻi 374, 387, 146 P.3d 89, 102 (2006) (explaining "[w]e have repeatedly warned that an appellate court will not sift through a voluminous record" where appellant fails to provide citations to the record).

Without the relevant transcript, "this court does not[] have a basis upon which to review the point of error raised in the present appeal." State v. Hoang, 93 Hawaiʻi 333, 334, 3 P.3d 499, 500 (2000).

**(5)** Seghorn contends the Board "erred when it failed to allow re-opening and/or reconsideration." (Formatting altered.)

Without referencing specific findings or conclusions, Seghorn argues the Board's decision should have been reopened to

---

[2]  HRAP Rule 28(b)(3) provides, "[r]ecord references shall include a description of the document referenced, the JIMS or JEFS docket number and electronic page citations . . . ."  The opening brief's reference to record citations do not include the docket number(s).  Counsel is cautioned to adhere to the HRAP requirements.

correct the error that: (1) "there was no authorization signed by Seghorn to authorize treating physician [Douglas Olsen, M.D. (**Dr. Olsen**)] to release records by subpoena"; (2) "Seghorn had received no medical treatment, nor had actually been seen by Dr. Olsen to receive certifications of disability . . . ;" and (3) she "lack[ed] motivation to resume work, despite total lack of evidence to support the Board's finding."

Without providing citations to the record, Seghorn then asserts "authorization was in Employer's file, Seghorn was in fact under medical treatment, and did desire [to] return to work." (Formatting altered.)

The Board's decision noted on April 21, 2017, Employer requested Seghorn sign an authorization to release medical records, and there was no evidence the form was signed and returned to Employer. However, the authorization to release information Seghorn sought to introduce was an authorized release of her medical information to her attorney, not to Employer, and predated the April 21, 2017 request. Thus even if considered, the authorization to release included in the record would not establish a mistake of fact by the Board, or that Employer "deliberately decided not to obtain records of treatment."

In addition, Seghorn represented additional medical records from Dr. Olsen, along with other evidence already in the

9

record, would show proof of continued disability and "aid in a just resolution" of her claim. Her declaration stated she was unaware Dr. Rogers and Dr. Goodyear recommended vocational rehabilitation for her, but that "all my life I have been able to find satisfactory jobs by myself" and she wanted to return to her same job and position once her doctors agreed she would be able to do so. Seghorn, however, offers no explanation as to why this information was not presented to the Board before it issued its decision.

Therefore, the Board did not abuse its discretion in denying the motion to reopen or reconsider.

Based on the foregoing, we affirm the: (1) October 23, 2019 "Order Denying Claimant's Motion for Re-Opening and/or Reconsideration"; (2) October 4, 2019 Amended Decision and Order; and (3) August 21, 2019 Order Denying Motion to Compel.

DATED: Honolulu, Hawaiʻi, May 31, 2024.

| On the briefs: | /s/ Keith K. Hiraoka<br>Presiding Judge |
|---|---|
| Stanford H. Masui,<br>for Claimant-Appellant-<br>Appellant. | /s/ Clyde J. Wadsworth<br>Associate Judge |
| Shawn L.M. Benton,<br>(Cox, Wootton, Lerner,<br>Griffin & Hansen),<br>for Employer-Cross-Appellant<br>Appellee, and<br>Adjuster-Cross-Appellant-<br>Appellee. | /s/ Sonja M.P. McCullen<br>Associate Judge |